CSX CORPORATION, et al., Plaintiffs,

v.

The UNITED STATES, Defendant.

No. 95–858T.

United States Court of Federal Claims.

June 27, 2006.

---

David W. Feeney, Cadwalader, Wickersham & Taft LLP, New York, New York, attorney of record for plaintiffs. Burton Spivak, Cadwalader, Wickersham & Taft LLP, and Stephen N. Shulman, Ivins, Phillips & Barker, Washington, DC, of counsel.

Benjamin C. King, Jr., with whom were Assistant Attorney General Eileen J. O'Connor and Chief David Gustafson, Court of Federal Claims Section, Tax Division, Department of Justice, Washington, DC, for defendant.

## SUPPLEMENTARY DECISION

WIESE, Judge.

### I.

In an earlier opinion issued in this employment tax refund suit, this court concluded that supplemental unemployment compensation benefits as defined in I.R.C. § 3402(o) [1] do not constitute payments subject to federal employment taxes under the Railroad Retirement Tax Act, I.R.C. §§ 3201–3202 and 3231–3233 (railroad retirement taxes), or the Federal Insurance Contributions Act, I.R.C. §§ 3121–3128 (social security taxes). *CSX Corp. v. United States,* 52 Fed.Cl. 208 (2002). In addition, we considered whether various payments made by plaintiffs to their employees pursuant to a reduction-in-force program qualified as such benefits.

Among the several categories of payments considered were so-called separation payments, *i.e.,* lump-sum amounts given in exchange for an employee's agreement to terminate his or her employment relationship with the company and to relinquish all rights and benefits associated with that relationship. We concluded that such payments when elected by an employee then in a layoff status qualified as supplemental unemployment compensation benefits, whereas such payments when elected by an employee then in active status did not. We explained our reasoning as follows:

[T]he employee who elects a separation payment in lieu of layoff benefits cannot be said to have voluntarily separated from employment. In that particular situation, the employee is not electing to separate from employment—that change in status has already taken place—but is, instead, electing to resolve the uncertainty associated with a separation from employment of indefinite duration *(i.e.,* the layoff) in favor of a permanent separation. The employee's election to permanently relinquish his or her status as an employee after having been involuntarily separated from employment in the first instance does not alter the character of the initial separation: it remains involuntary. As a result, the decision to accept such separation payments does not make the payments ineligible for treatment as supplemental unemployment compensation benefits under § 3402(o).

*Id.* at 220. As to employees who elected separation while in active status, we further explained:

As to the other separation payments in issue here, however, a different outcome is required. Specifically, employees who elect separation in lieu of remaining in their existing positions (including those employees who elect separation in lieu of standby), cannot be described as having been involuntarily separated. For these employees, the decision to terminate the employment relationship is their own, not their employer's. And this remains true even if it was not the attractiveness of the separation payment that persuaded the employee to act but rather the possibility of a layoff or the dislocation of a forced transfer that prompted the termination decision. Though avoidance of economic uncertainty may indeed force such a decision, where the decision itself originates with the employee, the separation must be regarded as voluntary. In these situations, then, the separation payments do not qual-

---

1. I.R.C. § 3402(o) defines supplemental unemployment compensation benefits as "amounts ... paid to an employee, pursuant to a plan to which the employer is a party, because of an employee's involuntary separation from employment (wheth-er or not such separation is temporary), resulting directly from a reduction in force, the discontinuance of a plant or operation, or other similar conditions."

ify as supplemental unemployment compensation benefits.

*Id.*

The parties now ask the court to address two additional issues. First, the parties disagree as to which of the above-identified payment categories—voluntary or involuntary separation from employment—applies to a type of separation payments we have not previously considered. Specifically, the question is whether the separation payments made to laid off employees under Article III of the various employee protective agreements executed over a period of years between plaintiffs and their unionized clerical employees qualify as supplemental unemployment compensation benefits. Second, the parties are in dispute as to the sufficiency of the proof plaintiffs have offered to establish that certain employees were on furlough at the time they elected to separate. The parties have asked the court to resolve these issues so that they may continue their efforts to develop a stipulation of facts to support an entry of judgment in accordance with the court's prior opinion.

## II.

■ The Article III provisions at issue established a mechanism, referred to as "forced transfers," that permitted plaintiffs to pursue their reduction-in-force efforts by encouraging the separation of furloughed employees. Specifically, employees subject to forced transfers were required to choose among (i) accepting a transfer to a position in another location that would entail a change of residence and could be subsequently eliminated, (ii) remaining on furlough but losing the furlough benefits to which they otherwise were entitled while on furlough, or (iii) separating from the company for a separation allowance.

Given the stated options, the question the parties pose is whether payments to a furloughed employee who declines to transfer and instead elects to accept a separation allowance rather than remain in layoff status (without benefits) can be considered "amounts ... paid to an employee ... because of an employee's involuntary separation from employment." I.R.C. § 3402(*o*)(2).

Plaintiff maintains that such a characterization is appropriate because the payments are directed to employees who already have been involuntarily separated from employment. Thus, in plaintiff's view, the payments simply acknowledge the transition in an employee's existing involuntary separation status from that of indefinite duration (*i.e.,* the layoff) to that of a permanent separation. Consistent with the court's earlier decision, plaintiff maintains, such payments are correctly classified as supplemental unemployment compensation benefits.

Defendant disagrees. The payments at issue here, defendant maintains, do not reflect an employee's decision to accept separation payments in lieu of remaining in layoff status. Rather, these payments reflect the employee's decision to accept separation payments in lieu of returning to active employment by transferring to a position at another location. Under these circumstances, defendant argues that the separation payments cannot logically be identified as an extension of amounts paid because of an employee's involuntary separation from employment and therefore do not constitute supplemental unemployment compensation benefits.

We agree with defendant's argument. A laid off employee who declines the opportunity to resume his or her employment (albeit at another location) and who instead elects to separate in lieu of relinquishing all layoff benefits cannot be said to have been involuntarily separated. Rather, in that circumstance, the laid off employee's decision to separate in lieu of accepting the forced transfer is indistinguishable from that of an active employee who similarly elects to separate in lieu of facing the risk of a forced transfer. In either case, it is the reluctance to accept employment at a new location that prompts the decision to separate. The decision is the employee's alone; the separation, therefore, is voluntary. Accordingly, the payments made upon separation do not qualify as supplemental unemployment compensation benefits.

## III.

■ The second issue we have been asked to address concerns the sufficiency of the

proof plaintiffs have offered to verify that some 84 former employees were on furlough at the time they elected to separate (and, therefore, for whom no employment taxes would be owing). That proof involves corporate interoffice documents (typified by a memorandum from the senior vice president of transportation to the accounting and taxation office) requesting the issuance of checks covering separation payments for the "employees listed below [who] have accepted offer[s] of $50,000 for their resignation from the service of the Company." In addition to the employees' names and pertinent personal data, there also appears alongside each name a handwritten notation, the letter "F." It is this handwritten notation that provides the basis for plaintiffs' contention that the listed individuals were on furlough at the time of their separations.

Defendant does not challenge either the authenticity of the various documents upon which plaintiffs rely or plaintiffs' contention that the handwritten notation was a contemporaneous notation indicating that the employees were on furlough at the time their separations took place. Defendant does dispute, however, that this documentation is sufficient to establish that the employees were on furlough at the time they elected to separate.

In this connection, defendant points out that during the period in question (1984–1990), layoffs or furloughs in the railroad industry often involved a status of limited duration with employees transitioning between layoff and active status with some frequency. Thus, defendant goes on to explain, under the memorandum agreements authorizing employee separations in a given seniority district,[2] an employee identified as furloughed at that time (*i.e.*, as of the date of agreement) and whose subsequent election to separate was executed on a form that retained that original designation may in fact have been in active status at the time the election to separate was actually made. Additionally, that same employee, defendant further notes, may have returned to a furlough status on the date the separation from employment took effect. Given this constancy of change in work status, defendant maintains that the proof plaintiffs offer with regard to an employee's claimed furlough status on the date the election to separate was made is not sufficient. We are urged, then, to reject this proof.

We deem plaintiffs' proof sufficient. Although defendant is correct that the documentation provided by plaintiffs does not establish with certainty that the listed employees were in fact in layoff status at the time they elected separation, we conclude that defendant's concern is conjectural only and, as such, does not diminish the reliability of plaintiffs' proof. In particular, the proof demonstrates that the listed employees were identified as furloughed employees under the memorandum agreements recognizing their eligibility to separate, their separations were processed under election forms identifying them as furloughed employees, and, finally, they were on furlough at the time their separations went into effect and the separation payments were made. From an administrative standpoint, then, these separations were regarded as separations of laid off employees, not active employees. We should regard them similarly.

## CONCLUSION

For the reasons set forth above, we conclude that the separation payments made pursuant to Article III of the employee protective agreements allowing an employee to separate, to transfer, or to remain on furlough do not constitute supplemental unemployment compensation benefits under I.R.C. § 3402(*o*) and are therefore subject to federal employment taxes. In addition, we find that the proof plaintiffs have offered is sufficient to demonstrate that certain employees were on furlough at the time they elected to separate. Accordingly, the parties shall continue their efforts to develop a stipulation of facts to support an entry of judgment consis-

---

**2.** During the May 10, 2006, hearing in this matter, defendant explained that voluntary separations were carried out pursuant to a memorandum agreement negotiated on the basis of a particular seniority district. Absent such a separation agreement, added plaintiffs, laid off employees could be removed only through forced transfers.

tent with the court's April 1, 2002, opinion and this supplementary decision.